IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JEFFREY RIOS** | * | |
| | * | |
| Petitioner, | * | |
| | * | Civil No. **PJM 11-2238** |
| v. | * | Crim. No. **PJM 10-0017** |
| | * | |
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| Respondent. | * | |

**MEMORANDUM OPINION**

Jeffrey Rios, proceeding *pro se*, filed a Motion to Vacate his sentence under 28 U.S.C. § 2255 [Paper No. 32]. The Court subsequently appointed Rios counsel, and through counsel, Rios filed a Supplement to his Motion to Vacate [Paper No. 39]. Having considered Rios's Motion, Supplement, and the Government's Opposition thereto, the Court **DENIES** the Motion.

**I.**

On the evening of October 21, 2009, Prince George's County Police Department detectives were conducting surveillance at an apartment complex in Suitland, Maryland in an effort to serve an outstanding warrant. The detectives observed the wanted individual, accompanied by Rios, exit a building and walk toward a parking lot. When the detectives approached the men and ordered them to the ground, Rios dropped his jacket and tossed an object underneath an adjacent vehicle. After securing both men, the officers recovered a Glock Model 22, .40 caliber handgun loaded with several rounds of ammunition from underneath the nearby vehicle. Rios was then arrested and searched. Officers found 89.14 grams of cocaine base in his front pants pocket and 26.8 grams of marijuana in his jacket. Prior to October 2009, Rios had been convicted of a felony in Maryland state court and his civil rights had not been restored.

On January 3, 2010, Rios was indicted for possession with intent to distribute fifty or more grams of a mixture or substance containing a detectable amount of cocaine base, commonly known as "crack cocaine," in violation of 21 U.S.C. § 841(a)(1); possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g); and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). On May 25, 2010, pursuant to a Rule 11(c)(1)(C) plea agreement, Rios pled guilty to counts one and two of the indictment and agreed to a sentence of 120 months concurrent on both counts.[1] The Government agreed to dismiss the third count, which carried a 60-month sentence consecutive to any other term of imprisonment. During the plea colloquy, Rios confirmed that he was entering the plea agreement voluntarily without being coerced, that he fully understood the proceedings, and that he was satisfied with his counsel's representation. Rios's counsel further explained that the agreement was "the result of a lot of work in terms of negotiation," adding, "I think that a lot of careful consideration was given to this." The Court accepted the plea.

On September 8, 2010, the Court sentenced Rios pursuant to the plea agreement, imposing a sentence of 120 months' imprisonment concurrent on counts one and two. The Government, consistent with the plea agreement, dismissed count three. At the hearing, the Government stated that the agreement had been negotiated to ensure Rios's sentence remained unaltered even if the recently enacted Fair Sentencing Act of 2010 ("FSA" or the "Act"), Pub. L. No. 111-220, 124 Stat. 2372, was applied retroactively. Specifically, the Government "not[ed] that part of this agreement was designed to . . . preserve the sentence regardless of whether the crack laws are amended retroactively."

---

[1] The agreement states in relevant part: "The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of 120 months imprisonment on Counts One and Two, to run concurrently, is the appropriate disposition of this case."

On August 12, 2011, Rios filed this Motion to Vacate pursuant to 28 U.S.C. § 2255, arguing that he should be re-sentenced in light of the changes effected by the FSA, and that his counsel was ineffective. On November 4, 2011, he filed a Supplement, amending, *inter alia*, his statements about counsel's performance. The Government filed an Opposition on January 23, 2012.

**II.**

Enacted on August 3, 2010, the FSA amended the drug quantity requirements for triggering statutory mandatory minimum penalties for possession with intent to distribute a controlled substance. For the ten-year mandatory minimum for crack cocaine to apply, the Act changed the threshold amount from 50 to 280 grams. For the five-year mandatory minimum to apply, the Act changed the threshold amount to 28 grams.

Passage of the FSA spurred judicial challenges to determine whether it would be applied retroactively and, in particular, it would be applied to plea bargains made pursuant to Fed. R. Crim. P. 11(c)(1)(C), commonly known as "(C) agreements."[2] In *Dorsey v. United States*, the Supreme Court held that the Act applied retroactively to defendants whose criminal conduct occurred before August 3, 2010 but who were sentenced after that date. __ U.S. __, 132 S.Ct. 2321, 2331 (2012). With respect to (C) agreements, five Justices in *Freeman v. United States* rejected the view that such agreements preclude defendants from seeking a reduction in their sentence under 18 U.S.C. § 3582(c)(2) based on retroactive amendments to the Sentencing Guidelines.[3] __ U.S. __, 131 S.Ct. 2685, 2689 (2011). Justice Sotomayor's controlling

---

[2] These agreements differ from standard plea agreements in that they consist of a sentencing recommendation which the Court agrees to bind itself to. The court does not independently calculate and impose a sentence based on the Sentencing Guidelines and aggravating or mitigating factors. Instead, the court may only accept or reject the recommendation, and if accepted, the court must impose the agreed-upon sentence without deviation. *See* FED. R. CRIM. P. 11(c)(1)(C).

[3] 18 U.S.C. § 3582(c) states: "The court may not modify a term of imprisonment once it has been imposed *except that* . . . in the case of a defendant who has been sentenced to a term of imprisonment *based on* a sentencing range

concurrence establishes the applicable analytical framework: "[I]f a (C) agreement expressly uses a Guidelines sentencing range applicable to the charged offense to establish the term of imprisonment, and that range is subsequently lowered by the United States Sentencing Commission, the term of imprisonment is 'based on' the range employed and the defendant is eligible for sentence reduction under § 3582(c)(2)." *Id.* at 2695; *see also United States v. Brown*, 653 F.3d 337, 340 (4th Cir. 2011) (noting that under the Supreme Court's "fragmented opinion, Justice Sotomayor's rationale becomes the Court's holding").

### III.

### A.

Although Rios's Motion is styled as a Motion to Vacate under § 2255, it is better understood as a motion seeking a reduction in his sentence under 18 U.S.C. § 3582.  As the Office of General Counsel of the United States Sentencing Commission has advised, "[t]he proper vehicle for seeking a sentence reduction pursuant to an amendment to the guidelines given retroactive application by the Commission is a motion to reduce sentence pursuant to 18 U.S.C. § 3582."  UNITED STATES SENTENCING COMMISSION, CRACK RETROACTIVITY: PROCEDURAL ISSUES 15 (2012), *available at* http://www.ussc.gov/Legal/Primers/Primer_Crack_Retroactivity.pdf (citations omitted); *see also United States v. Chandler*, 534 F.3d 45, 51 (1st Cir. 2008) ("The remedy for defendants who believe they are entitled to such resentencing [under the retroactive revisions to the guidelines for crack cocaine offenses] is to file a motion with the district court seeking relief under 18 U.S.C. § 3582(c)(2).").  Because Rios's initial Motion was filed *pro se*, and "[l]abels assigned to pleadings filed by *pro se* litigants are not

---

that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." (emphases added).

determinative of a claim's true nature," *Fincher v. United States*, Nos. 7:11-cv-70010-GRA, 7:08-cr-01219-GRA, 2011 WL 824591, at *5 (D.S.C. Mar. 7, 2011) (citing *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978)), the Court will construe Rios's Motion as a motion to reduce sentence under 18 U.S.C. § 3582(c)(2).

**B.**

Rios argues that he is entitled to a reduction of his sentence under the FSA because his offense involved possession of 89.14 grams of crack cocaine, which formerly carried a mandatory minimum of ten-years' imprisonment but now falls within the range triggering a reduced five-year mandatory minimum. His claim is without merit.

*Freeman* dictates that a defendant sentenced pursuant to a Rule (c)(1)(C) plea is eligible for a sentence reduction only if his sentence was "based on" a Guidelines range that is subsequently reduced. 131 S.Ct. at 2695 (Sotomayor, J., concurring). To determine whether the sentence was "based on" the Guidelines, "the reviewing court must necessarily look to the agreement itself" to ascertain whether it "expressly uses" a Guidelines range. *Id.* at 2698 n.2; *see also United States v. Rivera-Martinez*, 665 F.3d 344, 349 (1st Cir. 2011) ("[I]t is the terms contained within the four corners of the plea agreement that matter."). The plea agreement at issue in *Freeman* expressly stated that the defendant agreed "to have his sentence determined pursuant to the Sentencing Guidelines." *Freeman*, 131 S.Ct. at 2699 (Sotomayor, J., concurring). Conversely, if a plea agreement merely specifies an appropriate range of imprisonment, reliance on the Guidelines is not sufficiently express, and the defendant is not entitled to relief. *See United States v. Brown*, 653 F.3d 337, 340 (4th Cir. 2011) (holding that a

plea agreement that "simply states that 'the appropriate sentence in this case is incarceration for not less than 180 months and not more than 240 months'" did not warrant a sentence reduction).[4]

The plea agreement Rios signed and the Court accepted did not expressly use the Sentencing Guidelines to set the term of imprisonment. The agreement states, in relevant part, "[t]he parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of 120 months imprisonment on Counts One and Two, to run concurrently, is the appropriate disposition of this case." The agreement never suggests that the Sentencing Guidelines had determined the sentence. Instead, the record reflects that the agreed-upon recommendation was the result of a well-considered negotiation process, including the Government's willingness to dismiss the third count of the indictment, which itself carried a five-year consecutive sentence. Rios's counsel himself stated that "a lot of careful consideration" went into the agreement, a product of "a lot of work in terms of negotiation between [himself] and the government."[5] Moreover, the Government noted that the "agreement was designed to . . . preserve the sentence regardless of whether the crack laws are amended retroactively." Because Rios's (C) plea was the product of calibrated negotiation between the parties and not "based on" the Sentencing Guidelines, his Motion must fail.

Rios also argues that his sentence should be reduced because it was driven by the ten-year mandatory minimum that applied prior to the FSA, and that he could have likely negotiated more favorable terms based on a five-year mandatory minimum. This argument, too, is unavailing. As Justice Sotomayor explains in her concurrence in *Freeman*, "the mere fact that

---

[4] Where "the plea agreement itself 'is the foundation for the term of imprisonment' imposed," not the Guidelines, the district court lacks authority under 18 U.S.C. § 3582(c)(2) to grant a defendant's Motion for a reduced sentence. *Brown*, 653 F.3d at 340 (quoting *Freeman*, 131 S. Ct. at 2696).

[5] Justice Sotomayor's concurring opinion makes clear that in this scenario a court may decline to reduce a sentence: "[T]he district court might decline to reduce the term of imprisonment of an eligible defendant in light of the Government's argument that it made significant concessions in the agreement—such as dropping a charge or forgoing a future charge—and therefore it would not have agreed to a lower sentence at the time the agreement was made." *Freeman,* 131 S.Ct. at 2699 n.6 (Sotomayor, J., concurring).

the parties to a (C) agreement may have considered the Guidelines in the course of their negotiations does not empower the court under § 3582(c)(2) to reduce the term of imprisonment they ultimately agreed upon[,]" since "plea bargaining necessarily occurs in the shadow of the sentencing scheme to which the defendant would otherwise be subject." 131 S.Ct. at 2697 (citation omitted). Thus, using "the Guidelines as a yardstick in deciding whether to accept a (C) agreement does not mean that the term of imprisonment imposed by the court is 'based on' a particular Guidelines sentencing range." *Id.* at 2696. "All that matters is whether the parties' binding plea agreement was expressly based on the Sentencing Guidelines, not whether the Guidelines informed the parties' decision to enter into the agreement or whether the Guidelines informed the court's decision to accept the agreement." *United States v. Dixon*, No. 11-3802, 2012 WL 2913732, at *5 (7th Cir. July 18, 2012) (citations omitted). Accordingly, even if Rios's sentence may have been influenced by the then-applicable ten-year mandatory minimum, he would not be entitled to a reduction. What is dispositive is the absence of language in Rios's plea agreement prescribing a sentence calculated using the Guidelines.

**IV.**

In his initial Motion to Vacate, Rios appears to argue that his attorney rendered ineffective assistance at the sentencing hearing. In his Supplement, however, Rios does not mention ineffectiveness and in a footnote suggests that he is abandoning the claim. In any event, to the extent that Rios still asserts that his counsel was ineffective, the Court finds his argument without merit.

**A.**

A claim of ineffective assistance of counsel is examined under the familiar two-prong framework set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*'s first

prong, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687.  A petitioner must establish that his attorney's performance "fell below an objective standard of reasonableness" under "prevailing professional norms." *Id.* at 688; *see also United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999).  "Judicial scrutiny of counsel's performance must be highly deferential [because i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Strickland*, 466 U.S. at 689.

Even if a habeas petitioner were able to demonstrate that his counsel's performance "fell below an objective standard of reasonableness" under "prevailing professional norms," he must also satisfy the second prong of the *Strickland* test by showing that his counsel's "deficient performance prejudiced the defense." *Id.* at 687.  To demonstrate prejudice at the sentencing stage, a petitioner must show that, but for counsel's deficient performance, there was at least a reasonable probability that the "result of the proceeding would have been different." *Id.* at 694.

**B.**

Rios does not satisfy *Strickland*'s two-prong test.  His only argument with respect to deficient performance is that counsel failed to raise the issue of retroactive application of the FSA, thereby waiving any claim under the Act.  But, in fact, as Rios acknowledges in his Supplement, counsel *did* raise the issue.[6]  Moreover, during his plea colloquy, Rios expressly stated that he was satisfied with his attorney's services, and such "declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  On this record, Rios has not established that his counsel's performance was deficient.

---

[6] Counsel stated on the record: "In light of the new amendment of the crack laws reducing the statutory mandatory minimum[,] . . . [i]t does not apply to Mr. Rios, but in the event Congress in its wisdom makes the law retroactive, we reserve any rights to avail ourselves of that."

Finally, even if Rios could show deficient performance on counsel's part, he has not demonstrated that but for the alleged error, the outcome would have been different. A Rule 11(c)(1)(C) plea agreement carries a stipulated sentence, and there is no indication that Rios was coerced or threatened to enter the plea. On the contrary, Rios testified at the plea hearing that he understood the proceedings and was agreeing to plead guilty voluntarily. Assuming *arguendo* that the Government had used a five-year mandatory minimum as the baseline for negotiations, it still could have pursued the charge for possession of a firearm in furtherance of a drug trafficking crime, which carries a five-year minimum sentence to be served *consecutively* to any other sentence. Rios has not shown that he would have received a sentence different than the one imposed, and on this independent basis, his ineffective assistance of counsel claim fails. *See Quesinberry v. Taylor*, 162 F.3d 273, 278 (4th Cir. 1998) (noting that if there is no prejudice to the Defendant, the Court need not review the reasonableness of counsel's performance).

### V.

For the foregoing reasons, Rios's Motion to Vacate his sentence under 28 U.S.C. § 2255 [Paper No. 32] is **DENIED**.

A separate Order will **ISSUE**.

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**August 28, 2012**